EDWARD S. CAMPBELL, receiver of the Middlesex County Bank,

*v.*

CORTLANDT PARKER, JR.

[Submitted December 27th, 1899.  Decided January 5th, 1900.
Filed March 24th, 1900.]

1. A sale of real estate made by a receiver is a judicial sale, in which the doctrine *caveat emptor* applies, though such sale was not ordered by the court.

2. Defendant, an attorney-at-law, purchased certain real estate at a receiver's sale, paid a portion of the price, and signed a memorandum acknowledging

Campbell v. Parker.

the purchase, and agreeing to comply with the conditions of the sale.—*Held*, that since there was no proof that the property was not worth the sum bid, the purchaser would be compelled to accept a conveyance, though he was ignorant of a restriction in the title, shown by the records, prohibiting the sale of liquors on the premises, and though the receiver, after such sale, verbally warranted the title to be free from all encumbrances.

3. A restrictive clause found in a deed of conveyance of land forbidding a particular use of the property, inserted for the benefit of other adjoining lots. owned and about to be conveyed by the grantor, is not such an encumbrance as is recognized as such in ordinary conversation among laymen, and included within the general representation by a layman made at a public sale that the property was free and clear of encumbrances.

Heard on petition, answer and proofs.

The petitioner, Edward S. Campbell, is the receiver appointed by this court of the Middlesex County Bank, an insolvent corporation, and as such advertised for sale, at public auction, on the 23d of September, 1899, a piece of real estate belonging to said bank, in the city of Perth Amboy. Written conditions were used at the sale providing for the payment of a percentage of ten per cent., and the signature of a memorandum of purchase by the purchaser, and for paying or securing the balance after the sale should be confirmed by the chancellor. On that day— September 23d—the property was put up for sale, and purchased by the respondent, Cortlandt Parker, Jr., for the sum of $8,400. He signed a memorandum of purchase in these words:

"I bid in the property described in the annexed notice of sale for the sum of eighty-four hundred dollars ($8,400), and agree to comply with the above conditions of sale."

The receiver gave to the respondent a receipt for the payment of the percentage, in these words:

"Received, September 23, 1899, eight hundred and forty dollars, being ten per centum (10 %) of eighty-four hundred dollars, at which price the property above referred to has been struck off to Cortlandt Parker, Jr., subject to above conditions or terms of sale."

After the property was struck off, and before signing the bid, the respondent inquired of the petitioner whether the land was

Campbell *v.* Parker.

free and clear of encumbrances, and he replied, "Yes, as I understand it." The sale was duly confirmed by the chancellor, and a deed tendered to the respondent, but he declined to complete the purchase because the property was subject to a restriction in its use contained in the deed of conveyance to the bank, in these words :

"This deed is accepted by the party of the second part, subject to the express covenant and restriction and condition, that no spirituous, malt, in which latter term lager beer is included, intoxicating or vinous liquors, preparations, or substances in the nature thereof, shall be manufactured, bought, sold, bartered, exchanged, given away, or kept for sale as a beverage, on the above described premises, or to be drunk thereon, and upon failure to comply with said covenant, condition and restriction, by said party of the second part, their successors and assigns, for and during the period of five years from the first day of October, A. D. 1891, that is to say, until the first day of October, that will be in A. D. 1896, then the party of the first part shall have the right to enter forthwith upon said premises without previous notice, and take such measures as may be necessary to enforce a compliance with the terms of said covenant, condition and restriction, during said period of five years, without incurring any liability for damages by reason of such entry, at law or in equity, to the said party of the second part, their successors or assigns. And said party of the second part hereby do give and grant to said party of the first part, full power and authority to make such entry as aforesaid, for which this shall be a sufficient warrant."

The deed in question was made by John D. Patterson and Richard Sharpe, Jr., executors of Ezekiel M. Patterson, to the Middlesex County Bank, dated September 19th, 1891, and recorded on October 3d, 1891, in the records of deeds of Middlesex county.

The lot in question is a triangular piece, situate in the northwesterly part of the city of Perth Amboy, several hundred feet east of the railroad, and on the edge of the business portion of the town. It is formed by the intersection of Smith street and New Brunswick avenue, formerly the turnpike; is one hundred feet front on Smith street, one hundred feet in depth on the west side, twenty-nine feet in the rear and one hundred and twenty-three feet on the turnpike, and its easterly corner forms an angle of about forty-five degrees. It is part of a tract of about thirty acres lying in that neighborhood, and to the west and north of the

lot here in question, which belonged to Ezekiel M. Patterson in his lifetime. His executors laid it out in building lots, and about the year 1892 sold several in that neighborhood by deed, which contained the same restrictive clause.

Proof was given by an expert in real estate in the neigborhood that such a clause would tend, in that locality, to reduce the market value of the premises; but no proof was offered, nor was it distinctly alleged in the respondent's answer to the petition that the property subject to the restriction was not worth the amount bid.

Respondent is a member of the New Jersey bar, of high standing and much experience.

*Mr. Sherrerd Depue*, for the petitioner.

*Mr. Chauncey G. Parker*, for the respondent.

PITNEY, V. C.

The questions presented by the record in this case have been argued with great ability and a complete exhaustion of the learning applicable thereto.

The principal grounds relied upon by the petitioner are :

*First.* That this was a judicial sale, in which the doctrine of *caveat emptor* measurably applies, and is brought within the reasoning and decision of the case of *Boorum* v. *Tucker, 6 Dick. Ch. Rep. 135,* which was affirmed, *sub nom. Hartshorne* v. *Boorum,* by the court of errors and appeals, in *7 Dick. Ch. Rep. 587,* for the reasons given in the court below.

*Second.* Failing in that point, then that the clause in the deed is in the nature of a condition and not a covenant, and that the time fixed for the forfeiture of the estate having elapsed, it has spent its force and is no longer efficacious ; and

*Third.* That, even if construed as a covenant, it expired by its own limitation at the end of five years.

These positions were all contested with great force and spirit by the counsel for the respondent.

Campbell *v.* Parker.

No question was made as to the power of the court to deal with the matter by petition.

On the first question counsel for the respondent contended that this was not a judicial sale in the sense in which that phrase is used in *Boorum* v. *Tucker,* and the line of cases which preceded it.

I am unable to adopt that view. It seems to me that if a sale by a sheriff by virtue of a writ directed to him by this court is a judicial sale, *a fortiori* one made by a receiver, who is appointed by this court, and who is in a sense an arm of the court and, so to speak, a part of it, is also a judicial sale. A sheriff is a ministerial officer elected by the people, and is not identified with the court in the same sense that a receiver is. It is urged that the sale in this case was not made by special order of the court, nor that it was what is called a forced sale. But I am unable to see any strength in that position. It is not of the essence of a judicial sale that it is made pursuant to an order of a court. Ordinary sales by a sheriff under a common law writ are not made by order of a court. The title of the premises in question was vested in the receiver upon his appointment by this court, and it then became his duty under his appointment to proceed at once to dispose of all the assets of the insolvent corporation, including this particular piece of real estate. Hence, it was a forced sale. No order of sale was necessary, but it was, nevertheless, a sale by the court in the strict sense of the term. And if a sale by the court is not a judicial sale, I am unable to imagine what sale would be properly so termed.

I conclude, therefore, that it must be dealt with precisely the same as if it had been made by a master of this court by special order, or by a sheriff under a writ of *fieri facias* directed to him. If so, then the rule found in the line of cases which culminated in *Boorum* v. *Tucker,* applies. The rule was there stated as follows (*6 Dick. Ch. Rep. 139*): " I understand the rule in New Jersey to be that a purchaser at a judicial sale is bound to take such title as an examination of the proceedings will show that he will get; he is bound to examine for himself beforehand to see what title he will obtain by the sale. The court, however,

treats a contract made with one of its officers as being made with the court itself, and will deal with its contractee upon equitable principles—the same principles, indeed, which govern in all cases of specific performance."

It is unnecessary to review all the authorities which preceded that case. Those not there particularly mentioned are collected and cited by Vice-Chancellor Van Fleet in *Hayes* v. *Stiger, 2 Stew. Eq. 196;* and the only question is whether or not the respondent has shown such a case of fraud, accident or mistake as will induce a court of equity to relieve him from the purchase upon the principles stated in that case.

No accident or fraud is here set up, but a verbal representation amounting to a sort of verbal warranty, like that set up in *Boorum* v. *Tucker,* is pleaded and proven; also a mistake on the part of the respondent, namely, ignorance of the existence of the clause found in the deed under which the bank held title. That representation in *Boorum* v. *Tucker* was held not sufficient of itself to relieve the purchasers from their liability to carry out their contract.

The restriction there was quite similar to that here. It was, to be sure, a restriction in the character of the building, and not in the use which should be made of it, but its object was to prevent the erection of any buildings that would be used for any purpose to make the locality any less desirable for first-class private residences. Thus it aimed at and was intended indirectly to affect the use of the property. In this case the object of the provision is precisely the same, although it is sought to be attained by a direct specification of the uses to which the premises should not be put. I can see no difference, in principle, for present purposes, between the two restrictive clauses. In *Boorum* v. *Tucker* it was held that, while the restriction was, strictly speaking, and, using the language of a learned conveyancer, an encumbrance, yet it was not such an encumbrance as is recognized as such in ordinary conversation among laymen, and included within the general representation by a layman made at a public sale that the property was free and clear of encumbrances. I think that the same must be said of the casual re-

mark made by the petitioner to the respondent after the property was struck off to him and before he signed the bid, namely, that he understood it to be free and clear of encumbrances. By encumbrances he meant encumbrances which must be satisfied by the payment of money, or would result in the adverse occupation of the premises—such as a widow's dower, or a mortgage, or a judgment, or an assessment for taxes or improvements. The respondent must have so understood it.

Further, I think the respondent has not brought himself, on the ground of mistake, within any exception to the general rule which has thus far been sanctioned by the courts. In *Twining* v. *Neil, 11 Stew. Eq. 470,* a plain man, not acquainted with the rules of law or methods necessary to be pursued to protect a dealer in real estate, purchased at a sheriff's sale under foreclosure, supposing, as many laymen do, that a sheriff's deed under foreclosure would give him a clear title to the whole premises free of other encumbrances, when, in point of fact, the sale was made under the foreclosure of a second mortgage to which the first mortgagee was not made a party, and the equity of redemption offered for sale was absolutely valueless, and he paid a price which represented the full value of the premises free of encumbrances. Upon proceedings to enforce the bid, he was relieved from his purchase on the ground, to use the language of the syllabus, " that, though the purchaser was negligent, and though there was no fraud or misrepresentation, on the ground of the gross inadequacy of the estate compared with the bid, this court ought not to interfere."

In *Sullivan* v. *Jennings, 17 Stew. Eq. 11,* a Dr. Smith held a first mortgage of over one thousand dollars. The complainants in the foreclosure held a second mortgage for $2,000, and Dr. Smith was not made a party. The sale was had, of course, subject to Dr. Smith's mortgage. He heard of the sale and supposed that he must attend and bid up the property in order to protect his own mortgage, and did so, and bid a great deal more than it was worth, supposing that his own mortgage was to be paid out of the bid. The language of the chancellor, in dealing with the case, is this : " When Dr. Smith made his

bid he did not design to trifle with the court.  I am satisfied that he intended in good faith to bid for the protection of his own interests, and that he now withholds the amount of his bid solely to obtain relief, if possible, from the consequences of his error.  So far then as the element of contempt, in the doctor's attitude, is concerned, I fail to see that it is deserving of such punishment as the granting of this application will inflict."

In both the cases just cited the purchasers were, severally, laymen, and without counsel.

In contrast with these cases is *Hayes* v. *Stiger, 2 Stew. Eq. 196,* where a somewhat similar mistake was made, but the purchaser was assisted at the sale by a member of the bar.  The defect in that case was that there was a failure to make the wife of the owner of the equity of redemption of one-half of the mortgaged premises a party to the foreclosure proceedings, whereby her inchoate right of dower was not cut off; and Vice-Chancellor Van Fleet, after an exhaustive examination of the authorities, refused to relieve the purchaser, on the ground that it was his duty to have examined the foreclosure proceedings and the history of the title to ascertain whether or not a clear title would be obtained thereunder.

Now, here, the restrictive clause in question is contained in the deed under which the insolvent bank obtained title, and was spread upon the records of the county.  The respondent is a lawyer of eminence and experience, and perfectly familiar with the rule that a purchaser of land at a judicial sale takes it subject to all encumbrances and defects shown by the record of the title.  Restrictions of this character are quite common in deeds of conveyance in New Jersey, particularly those conveying lots in suburban towns.  If the respondent at all anticipated the purchase of these premises, I think it was his duty to have examined the record of the title beforehand to ascertain what sort of a title he would get under the receiver's deed; and if he had asked the question of the receiver, within a seasonable time before he made the bid, he could have seen the original deed, which was in the possession of the receiver, and have examined it for himself.  It seems to me it was clearly and decidedly negligent in

him to bid upon the property without such preliminary examination. It would produce great inconvenience in the conduct of business of this character if parties might come in and bid upon land under such circumstances, and rely upon an examination of the title afterwards.

It is a part of the present case that there is no proof that the property is not worth the sum bid for it, subject to the restrictive clause in question. So far as appears to the court, all that the purchaser may lose is the increased value which the property might have if there were no restrictive clause in the deed. Under these circumstances it is no hardship upon him to be compelled to accept and pay for a conveyance of the premises at the price named.

This renders it unnecessary to consider and determine the true construction and effect of the restrictive clause in question.

The respondent, in his letter to the petitioner giving his reasons for repudiating the sale, besides setting up the defence already considered, referred to a small assessment for benefits which was laid on the property at about the time of the sale. This, I think (though without giving the subject full consideration), the receiver should either pay or let the purchaser assume and have a credit for its amount on the purchase-money. But as the receiver has succeeded on the point principally litigated, I do not think that that matter should prevent him from recovering costs, with interest on the purchase-money from the time it was due, and I will advise a decree accordingly.