272 N.J. Super. 186 (1993)
639 A.2d 413
DAVID SMITH, PLAINTIFF,
v.
JOHN BOYD AND CHICAGO TITLE INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided August 16, 1993.
*188 Capitola Young, for plaintiff.
Ronald E. Wiss, for defendants (Wolff & Samson, attorneys).
FAST, J.S.C.
The referenced matter had been tried by me as a bench trial on the issue of liability alone. Following the presentation of evidence on that issue, I reserved decision. This opinion decides the issue of liability. The question presented is whether a real estate title report, negligently prepared, subjects the preparer to liability or whether N.J.S.A. 2A:61-16 insulates the preparer from liability to a purchaser at a foreclosure sale conducted by a sheriff.
Plaintiff was the successful bidder at a sheriff's foreclosure sale. His bid was $19,500, the amount necessary to "make plaintiff whole" and therefore presumably the minimum bid for which the *189 property would be sold to an "outsider" (one other than a lienholder on the property). The sale was conducted by the sheriff at the request of the foreclosing plaintiff second mortgagee, represented by defendant John Boyd. The plaintiff in that foreclosure was Ronald Corum; Moses Burch was the mortgagor. However, there had been a prior (first) mortgage open of record, from Moses Burch to John S. Downer and Sarah L. Downer, as joint tenants. It also recited that it was given simultaneously with a deed into the mortgagor.
Boyd testified that he relied on the title report prepared by defendant, Chicago Title Insurance Company (hereafter "Chicago"), in processing the foreclosure. That title report, as material to this action, disclosed the mortgage being foreclosed, from Burch to Corum, as well as another mortgage from Burch, but not material to this action. There were other liens, also reported, also not relevant to this action. The title report failed to disclose the first mortgage, from Burch to Downer.
The title report was based on an "Examiner's [i.e., title searcher's] Report". The examiner's report did report both material mortgages and also apparently did have copies of both mortgages attached (in the nature of exhibits to the face page of the report). However, and critically, the title report prepared by Chicago and sent to Boyd failed to disclose the open first mortgage. It is therefore clear that Chicago negligently prepared the title report through the omission of the mortgage reported to it by the title examiner. Simply stated, at the same time, I find no basis for finding Boyd to have acted negligently. He simply did not know of the open mortgage and was given no reason to suspect that there was a prior mortgage open of record. I find that he properly relied on the title report in conducting all phases of the foreclosure. Likewise, I find that Chicago was not acting as his agent, but rather that Chicago was an independent contractor, for whose negligence Boyd would not be liable.
Consistent with his failure to have announced the prior lien (the subject first mortgage) at the sale, Boyd also signed an "Affidavit *190 of Consideration," attached to the sheriff's deed following the sale, marking the box on that form that recites "NO PRIOR MORTGAGES OR LIENS ARE OUTSTANDING." The form has those words in capital letters. In the area that would normally show prior mortgages, liens and encumbrances, the entry was made stating "None." This was admittedly contrary to state law which requires that all liens to which the sale is subject be shown in the affidavit. (It is the basis for confirming the amount of tax to be paid as a condition of recording the deed and must be attached to the deed in order to be accepted for recording.)
Notwithstanding that the affidavit was contrary to fact, there still is no basis for liability on the part of Boyd to plaintiff; he was not on notice but instead properly relied on the title report supplied to him by Chicago.

I

THE STATUTORY BASIS
N.J.S.A. 2A:61-16 provides relief to a purchaser at a sheriff's sale, with reference to prior liens not announced at a sale. The statute, as material, says:
Any purchaser of real estate at any public sale ... shall be entitled to be relieved from his [sic] bid if, before delivery of the deed, [he] shall satisfy the court ... of the existence of any substantial defect in or cloud upon the title of the real estate sold ... or of the existence of any lien or encumbrance thereon, unless a reasonable description... of the ... liens and encumbrances thereon, with the approximate amount of such liens and encumbrances, if any, be inserted in the notices and advertisements required by law, and in the conditions of sale....
It must be observed at the outset that the statutory relief is provided when there has been a failure to disclose a defect, lien or encumbrance in the notices and advertisements required by law, or in the conditions of sale. That failure would have to be the result of either an intentional failure or a negligent failure to make the disclosure. In this case, no claim has been made that the failure was intentional. This opinion therefor relates only to the negligent failure to make the disclosure of an existing lien at a sheriff's sale. I likewise observe that because a successful bidder *191 must raise the existence of the defect "before delivery of the deed [emphasis added]", the affidavit of title attached to the deed cannot be relied upon by a successful bidder to avoid acceptance of the deed. The affidavit is for tax and recording purposes after acceptance of the deed.
The existing first mortgage was neither recited in the advertisements for the sheriff's sale, nor announced at the time of sale. Boyd simply did not know of them and therefore did not include them in the information given to the sheriff for the advertisement nor to be included in the announcement to be made by the sheriff at the sale.
Plaintiff's reply to this defense is that the statute does not provide the sole relief to a purchaser at a foreclosure sale, but that the purchaser may retain the deed and seek the common law remedy of an action for damages. Ruskin v. Monticello B. & L. Ass'n., 106 N.J.L. 286, 150 A. 214 (Sup.Ct. 1930), on analogous facts, held to the contrary.
In that case, Ruskin sued the foreclosing mortgagee because the information provided to the sheriff to advertise the sale and to announce at the sale omitted an unpaid tax lien for the years 1925 and 1926. A lien for unpaid taxes for 1927 and 1928 had been included in both the advertisement and the announcements made at the time of sale. Plaintiff Ruskin bid in at the sale, based upon the announced liens, without further investigation, paid the sheriff, took the deed from the sheriff and then contracted to re-sell to a third party. At that point, the unpaid taxes, having been unadvertised and unannounced liens, were discovered "whereupon he brought this action against the building and loan association on some such theory as that that association, by negligence, led him into buying and paying for a property as being clear of taxes for 1926 and 1925, when in fact, it was not." Id. at 287, 150 A. 214.
In Ruskin, plaintiff's theory was "not for fraudulent misrepresentation, not because of any privity of contract, nor for deceit, but for negligence in failing to do properly what it had undertaken to do in pursuance of the statute. Such is the clear intendment of *192 the brief. Moreover, the claim is that this alleged right is quite independent of the statute [Sale of Land Act, Laws of 1906, ch. 144], on which no reliance is placed." Id. at 288, 150 A. 214. The statute contained essentially the same requirement as N.J.S.A. 2A:61-16, as quoted above.
The decision of the court was:
The argument is novel, and as we view it, wholly without merit. The old rule of caveat emptor bound a purchaser to ascertain for himself before he made his bid. Campbell v. Parker, 59 N.J. Eq. 342 [45 A. 116]. We know of no decision, and counsel for respondent cites none, in which the courts have gone farther than to relieve the purchaser from his bid on the ground of fraud, accident or mistake of fact, before delivery and acceptance of deed, and as a matter largely of discretion. See Hayes v. Stiger, 29 Id. 196. The act of 1906 was intended to put matters on a practical working basis, and deals solely with relief of a purchaser from his bid if within the reasonable time elapsing between sale and deed he shows an objection to title not stated at the time of sale. But the implication is that after such purchaser has taken his deed he is presumed to be satisfied with his bargain and cannot thereafter complain of something he could have discovered and did not discover. We consider that the proper rule is that a purchaser at a sale of this kind is entitled to rely in making his bid upon the statement, if any, of liens and encumbrances made in the advertisement and at the sale, but that after he has bid the property in and had a reasonable opportunity to check up on the encumbrances, and after such opportunity he has gone on and taken his deed, he cannot recover against the judgment creditor or foreclosing mortgagee on account of encumbrances not stated in the absence of proof of some misrepresentation amounting to legal fraud which induced him to make the purchase.
Plaintiff attempts to distinguish Ruskin both factually and legally. Factually, plaintiff asserts, in Ruskin the mortgagee gave the sheriff a statement of the liens and encumbrances on the property. The purpose of the "statement" is for the sheriff to include liens to which the property is subject in the notice of sale, and to announce them at the actual sale. That a "statement" was given to the Sheriff misses the point  the "statement" omitted the liens for the unpaid taxes for 1925 and 1926. The consequence is that they were not advertised or announced, similar to the first mortgage not having been announced here. (Another distinction, not relied on by plaintiff here, is that Ruskin sued the foreclosing mortgagee, rather than a title company or attorney processing the foreclosure. However, I agree that this distinction is irrelevant; the statute does not provide a bidder's remedy against any distinct *193 person or class, but rather provides the remedy with reference to the bid at the sale.)
Legally, plaintiff asserts, "the old rule of caveat emptor cited in Ruskin is an antiquated and outdated concept in this day and age of title companies providing title searches and title insurance, ... No attorney today would enter into, on behalf of a client, a sale of real estate; nor close title on property; nor foreclose on property; ... without a title report being prepared by a reliable title company and that company be prepared to stand behind that report and issue a title policy to indemnify for losses incurred due to any defect in any report prepared by them."
Defendant rebuts that factually, noting that that was exactly what plaintiff did, i.e., buy at the sheriff's sale without a title search, title report or title policy.
Reevaluation and revision of the doctrine of caveat emptor was avoided in Reste Realty Corporation v. Cooper, 53 N.J. 444, 251 A.2d 268 (1969), because the Court found that it would be a wholly inequitable application of the doctrine to apply it to a party who had no knowledge of a latent defect. Nevertheless, the Court noted several factors that should be considered readily available to a lessor who in turn could inform a prospective lessee of those factors. The opinion noted that: "These factors have produced persuasive arguments for reevaluation of the caveat emptor doctrine ..." Reste was cited in Weintraub v. Krobatsch, 64 N.J. 445, 456, 317 A.2d 68 (1974). Weintraub said:
Our courts have come a long way since the days when the judicial emphasis was on formal rules and ancient precedents rather than on modern concepts of justice and fair dealing. While admittedly our law has progressed more slowly in the real property field than in other fields, there have been notable stirrings even there. In Schipper [v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314] ... we repeatedly stressed that our law should be based on current notions of what is "right and just." 44 N.J. at 90 [207 A.2d 314]. In Reste we expressed similar thoughts in connection with the lease of real property .... we pointed out that in the circumstances "it would be a wholly inequitable application of caveat emptor to charge her with knowledge of it." 53 N.J. at 453-454 [251 A.2d 268]. Both Schipper and Reste were departures from earlier decisions which are nonetheless still relied on by seller here. No purpose would now be served by pursuing any discussion of those earlier decisions since we are satisfied that current principles grounded on *194 justice and fair dealing, embraced throughout this opinion, clearly call for a full trial below; ...
[Ibid.]
Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 91, 207 A.2d 314 (1965), observed that:

Caveat emptor developed when the buyer and seller were in an equal bargaining position and they could readily be expected to protect themselves in the deed. Buyers of mass produced development homes are not on an equal footing with the builder vendors and are no more able to protect themselves in the deed than are automobile purchasers in a position to protect themselves in the bill of sale.
N.J.S.A. 2A:61-16 provides the ability to a purchaser at a foreclosure sale to protect against liens omitted from an advertisement or announcement. Therefore, plaintiff was afforded the ability to protect himself by obtaining a title search and rescinding the bid if that search disclosed a defect for which the statute permitted rescission. In this situation, there is no unequal position: the equality is obvious. Plaintiff could have protected himself by a title search, just as he says that defendant Chicago is liable to him for not having properly reported the state of title to the foreclosing mortgagee. I therefore find that it is appropriate to apply the principle of caveat emptor to the circumstances presented here.
Plaintiff rejoins this point by arguing, without authority, that there can be no interpretation of N.J.S.A. 2A:61-16 that it was the legislative intent to require all purchasers at foreclosure sales to conduct a search on the property. To the contrary, a sheriff's sale has been interpreted as creating a caveat emptor situation. Brady v. Carteret Realty Co., 67 N.J. Eq. 641, 643, 60 A. 938 (E & A, 1904); Persons v. Bergmann, 182 N.J. Super. 476, 442 A.2d 647 (App.Div. 1982). Ruskin v. Monticello B. & L. Ass'n., supra, 106 N.J.L. at 286, 150 A. 214 also was based on the "old rule of caveat emptor." As noted above, I find no reason not to apply that old rule. I find that the statute does contemplate that buyers will protect themselves against a title defect by conducting a search, or buy subject to the risks that an accurate search would have disclosed.
*195 Plaintiff's argument that requiring a search would hold up the conveyance by the sheriff is without support in the evidence. There was no evidentiary proffer that a search for the purpose of bidding at, or after, a sheriff's sale would take more than the ten days before which the sheriff cannot deliver the deed. I also note that if there are any delays in recording liens, they should not affect such a search, because I know of no interest that would affect title after the recording of the lis pendens in that foreclosure action. Therefore, I know of no reason why a purchaser at a foreclosure sale could not have a timely search before the sheriff tenders the deed, anyway.
I find that N.J.S.A. 2A:61-16 provides a defense to Chicago for the negligent preparation of its title report.

II

COMMON LAW CONCEPTS NEGLIGENCE/FRAUDULENT INDUCEMENT
As noted above in quoting from Ruskin, the statutory relief would not be a defense when defendant has been found to have made a misrepresentation amounting to legal fraud which induced plaintiff to make the purchase.
Plaintiff here made a successful bid of $19,500. His testimony was that, if the approximate amount of the first mortgage had been announced at the sale, he would have bid less by the amount of that outstanding first mortgage. The amount that he later paid to have the first mortgage cancelled was $22,981.40. Therefore, because the amount that he did bid, $19,500, was less than the first mortgage balance, he presumably would have made no bid. Two months after his purchase, he sold the property for $168,000. His testimony is therefore, at best, questionable. At the very least, plaintiff has failed to show that the failure to have announced the approximate amount of the first mortgage was an inducement for his bid. I find that plaintiff would have made the bid that he did, the minimum required in order to pay off the *196 foreclosing plaintiff, whether the first mortgage had been announced or not, even though his profit was less by the amount needed to pay off the mortgage. Plaintiff has failed to satisfy his burden of proof to the contrary.
Plaintiff's claim of negligence depends upon both the existence of a duty and the breach of that duty. I find that no common law duty existed from Chicago to plaintiff (and therefore do not even get to the issue of breach of any duty). "The question of whether a duty exists is a matter of law properly decided by the court ... The question of duty involves largely a matter of policy and fairness, `a weighing of the relationship of the parties, the nature of the risk, ..., the public interest in the solution,'... `and all of the surrounding circumstances'" Johnson v. Usdin Louis Co., Inc., 248 N.J. Super. 525, 529, 591 A.2d 959 (App.Div. 1991) (citations omitted). As discussed above, the purchase of real estate essentially requires the purchaser to beware of the seller, to exercise such protections as are reasonably available to the purchaser. The seller is not obligated by common law to advise a buyer of the state of title. As a matter of policy and fairness, plaintiff was obligated to seek his own protection. Chicago's having made a title report does not create a common law duty to plaintiff. That report was for the benefit of the foreclosing plaintiff; to ascertain the proper parties defendant and to give the appropriate information to the sheriff for the advertisement and the announcements at sale.
2 Harper & James, Law of Torts, § 18.6, at 1052 (1956), suggests various policy considerations in determining the existence of a duty, including: the burden that would be put on defendant's activity (here, no greater than that actually undertaken); the extent to which the risk is normally one incident to that activity (here, the activity is undertaken to determine the specific risk); the risk and burden to plaintiff; the respective availability and cost of insurance to the two parties (here the insurance was available to plaintiff and the cost would have been the same as that to the foreclosing mortgagee); the prevalence of insurance in *197 fact (certainly available to plaintiff, even from Chicago); and the desirability and effectiveness of putting the pressure to insure on one rather than the other (here, caveat emptor). Under the circumstances, affording plaintiff the protection paid for by the foreclosing mortgagee without cost to plaintiff when it is likewise available to plaintiff would be unfair and unjust. Simply stated, plaintiff cannot justifiably rely on the benefits of the search paid for and directed to the foreclosing mortgagee.
Based upon that lack of reasonable reliance, I find the principles of Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983), to be inapplicable. In that case, partial summary judgment was reversed where an auditor furnished an opinion with no limitation in the certificate as to whom the company (client) could disseminate the financial statement prepared by defendant and where there was reasonable reliance on the report. As noted in Rosenblum, "Generally, within the outer limits fixed by the court as a matter of law, the reasonably foreseeable consequences of the negligent act define the duty and should be actionable." Id. at 339, 461 A.2d 138. By reason of the statutory relief available (i.e., rescission of his successful bid), as a result of plaintiff's obtaining a title search, no adverse consequences would have been foreseeable to plaintiff.
Finally, with reference to liability posited on duty, the duty to make the announcement at the sale results from the statute, rather than from common law concepts. The statute, at the same time, states the consequence of its breach, to wit, the rescission of the bid. Plaintiff is not entitled to any greater relief than that afforded by the authority creating the duty.

III

CONTRACT PRINCIPLES
Chicago also defends on the basis that plaintiff certainly was not a direct party to its agreement to do the search, and was not even a third party beneficiary of Chicago's contractual duty to *198 the foreclosing plaintiff. "The standard applied by courts in determining third-party beneficiary status is `whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts....' ... Unless such a conclusion can be derived, a third party has no cause of action despite the fact it may derive an incidental benefit from the contract's performance." Rieder Co. v. North Brunswick Tp., 227 N.J. Super. 214, 222, 546 A.2d 563 (App.Div. 1988) (citations omitted). Because the purpose of the title report was to ascertain the proper parties defendant and to give the appropriate information to the sheriff for the advertisement and the announcements at sale, plaintiff here was at best an incidental beneficiary and without contractual rights against Chicago.
To find for plaintiff would be tantamount to elevating him to the status of an insured, at no effort or expense to him. I am convinced that this would have been beyond the reasonable contemplation of the contracting parties and therefore affords no basis upon which to rest a judgment for plaintiff. Plaintiff's remedy for Chicago's negligence would have been to exercise his own due diligence by contracting on his own for a title report and/or title insurance, if he so chose. Here, he did not contract away the risk, he assumed it.
For the above reasons, the complaint is hereby dismissed; Mr. Wiss should forward an order reflecting the above.