810 A.2d 1077 (2002)
355 N.J. Super. 429
Mark SAVAGE, Plaintiff-Respondent,
v.
Nathan WEISSMAN, Jane Weissman, T.G. Makmy, Inc., Rosenbach & Rosenbach, Door Openings Corp. of New Jersey, Neil Goldwasser, Sally Goldwasser, and United States of America, Defendants, and
Realty Ownership Ventures, Inc., Applicant for Intervention-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 2002.
Decided August 1, 2002.
*1078 Richard O. Venino, Jr., argued the cause for appellant.
Keith A. Bonchi, Atlantic City, argued the cause for respondent (Goldberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Bonchi, on the brief).
Before Judges CUFF, WECKER and WINKELSTEIN.
The opinion of the court was delivered by CUFF, J.A.D.
In these consolidated appeals, we consider two appeals from orders denying a party the right to intervene in an action to foreclose tax sale certificates. These appeals require us to consider whether the circumstances of the intervenor's acquisition of title contravenes the public policy of this State and bars the intervenor's right of redemption. We affirm in modified form the three orders barring intervention and entering final judgment.
These appeals involve legal issues of a procedural nature; therefore, we provide an extensive discussion of the parties which have an interest in the property and the manner in which they derived each interest. On September 9, 1958, Edward V. Lipman and Gardina A. Lipman, his wife, executed a deed conveying a parcel of vacant property comprising approximately thirty acres in Freehold Township, Monmouth County, to Nathan Weissman. Sometime thereafter, Weissman and his wife, Jane, moved to California. In 1983, the Weissmans were divorced in California. As part of their divorce settlement, Nathan Weissman executed a quitclaim deed conveying an undivided one-half interest in the property to his former wife, now known as Jane Auster, as tenants in common. This deed was recorded on August 30, 1983.
On August 4, 1988, a judgment was entered in New Jersey against Nathan Weissman and in favor of T.G. Makmy, Inc. (Makmy) in the face amount of $29,008. Prejudgment interest amounted to $10,268.76 for a total judgment of $39,276.76.
The real estate taxes on the property were not paid and Albert Savage (now deceased), purchased a tax sale certificate *1079 for unpaid taxes on the property from Freehold Township (the Township) at a public sale on August 20, 1991. The total purchase price was $5,263.79. The tax sale certificate was dated August 28, 1991, and recorded on August 29, 1991. Subsequently, the taxes again became delinquent and, in 1996 and 1999, tax sale certificates were purchased by First Union National Bank (FUNB) from the Township. On July 29, 1999, the Estate of Albert Savage redeemed these two certificates by paying $13,623.52 to the Township tax collector. On July 30, 1999, the Estate of Albert Savage, "in consideration of the amount of $13,623.52 paid to said estate by Mark Savage [plaintiff]," assigned the 1991 tax sale certificate to plaintiff.
On March 23, 2000, plaintiff Mark Savage filed an in personam tax foreclosure complaint seeking to bar and foreclose defendants of all equity of redemption in and to the still-vacant property. Plaintiff joined as defendants Nathan Weissman and Jane Weissman, as the owners of the property, and various judgment creditors of Nathan Weissman, including Makmy and the United States. Defaults were eventually entered as to all defendants. The United States was dismissed as a defendant when its lien was satisfied.
Subsequent to the filing of the complaint, Makmy assigned its judgment against Nathan Weissman to Realty Ownership Ventures, Inc. (ROV) on August 28, 2000; the assignment was recorded on September 5, 2000. The net consideration paid to Makmy was $3000. As a result, ROV became the holder, by assignment, of the judgment entered in favor of Makmy against Nathan Weissman.
In October 2000, plaintiff applied to the Foreclosure Unit of the Superior Court for an order setting time, place and amount of redemption. In a certification dated September 22, 2000, plaintiff stated that, as of August 31, 2000, $63,723.10 was due on the 1991 tax sale certificate. On October 20, 2000, an order was entered setting December 8, 2000, as the time for redemption and $63,723.10 as the amount required to redeem the property referred to in the 1991 tax sale certificate. ROV, as assignee of the Makmy judgment, was served with a copy of this order.
On November 15, 2000, ROV, in its capacity as successor in interest to Makmy, filed a motion to vacate the order of October 20, 2000. This motion was supported by an affidavit, dated November 15, 2000, by Richard O. Venino, Jr., ROV's president and counsel. ROV argued it was entitled to redeem the tax sale certificate, and a 1994 amendment to N.J.S.A. 54:5-54, which barred a judgment creditor from exercising the right to redeem, was unconstitutional. On December 6, 2000, the judge issued and filed a memorandum opinion and order. The judge deferred consideration of the constitutionality of N.J.S.A. 54:5-54 until the Attorney General was notified of the challenge to the statute and given the opportunity to defend it.
On February 13, 2001, after the Attorney General declined to intervene, the judge issued a written decision on the motion. He found that ROV, as the assignee of Makmy, a judgment creditor, did not have standing to set aside the order setting time, place and amount of redemption. He then proceeded to find no constitutional infirmity. On February 13, 2001, the judge entered an order denying the motion by ROV.
In the meantime, ROV, on September 28, 2000, caused the issuance of a Law Division writ of execution on the Makmy judgment. At a pre-advertised sheriff's sale on December 4, 2000, ROV, the sole bidder, purchased the title and interest of Nathan Weissman in the property for $100. On January 5, 2001, a sheriff's deed *1080 was executed conveying Nathan Weissman's title and interest in the property to ROV. This deed was recorded between January 5 and February 15, 2001.
On February 15, 2001, ROV filed a motion requesting (1) substitution as a party defendant in the place of defendant Nathan Weissman, and (2) an order vacating the October 20, 2000 order setting time, place and amount of redemption entered in this action. In his supporting affidavit of February 15, 2001, Venino stated that ROV had acquired Nathan Weissman's one-half interest in the property at a judicial sale. On May 3, 2001, the judge issued his written decision regarding ROV's motion to intervene in the tax sale foreclosure. He found that intervention was barred because ROV had acquired Nathan Weissman's interest in the property for a nominal consideration.
In a footnote in the May 3, 2001 opinion, the judge referred to ROV's acquisition of the undivided one-half interest in the property held by Nathan Weissman's former wife, Jane Auster. ROV acquired the Auster interest on April 10, 2001, when Auster executed a quitclaim deed to ROV. The consideration for the deed was $3000. Contact between ROV and Auster was initiated following receipt of a notice of entry of default in a partition action commenced by ROV. ROV sought to exercise the right of redemption directly with the tax collector in June 2001. As the successor in title of both Nathan Weissman and Jane Auster, ROV did not seek to intervene in the tax sale foreclosure. ROV also filed a notice of appeal on May 8, 2001, from the February 13 and May 3, 2001 orders.
On June 8, 2001, the same day that ROV sought to redeem based on the title acquired from Jane Auster, ROV also filed opposition to plaintiff's motion for entry of a final judgment. The judge held that ROV had no standing to oppose the entry of final judgment because the May 3, 2001 order prohibited intervention in the foreclosure action. On July 6, 2001, final judgment was entered. On July 12, 2001, ROV, as successor in interest to Jane Auster, filed a notice of appeal from the July 6, 2001 final judgment. We consolidated both appeals by order dated August 22, 2001.

I
As a preliminary matter, we must address ROV's contention that the motion judge lacked jurisdiction to issue the July 6, 2001 final judgment. ROV contends that its notice of appeal from the May 3, 2001 order deprived the trial court of jurisdiction. We disagree.
Rule 2:9-1(a) provides that "supervision and control of the proceedings on appeal ... shall be in the appellate court from the time the appeal is taken." Except to the extent of enforcement and except as provided in the rule, once a notice of appeal has been filed, the trial court is deprived of jurisdiction in the matter. Manalapan Realty L.P. v. Township of Manalapan, 140 N.J. 366, 376, 658 A.2d 1230 (1995). A notice of appeal, however, may only be filed from a final judgment. R. 2:2-3(a).
Our review of the procedural history demonstrates that the May 8, 2001 notice of appeal concerns the interlocutory orders of February 13 and May 3, 2001. To be sure, there is authority that indicates that an order denying intervention to a party with an absolute right to intervene is final and appealable. Grober v. Kahn, 88 N.J.Super. 343, 360-61, 212 A.2d 384 (App. Div.1965), rev'd on other grounds, 47 N.J. 135, 219 A.2d 601 (1966). Contra Government Sec. Co. v. Waire, 94 N.J.Super. 586, 589, 229 A.2d 664 (App.Div.1967). Here, as is explicated in Section IV of this opinion, ROV did not have an absolute right to intervene.
*1081 The proper procedure was for ROV to file a motion for leave to appeal. The orders may have finally adjudicated ROV's applications to intervene but neither order, singly or combined, resolved all issues as to all parties. Appeals as of right may only be taken from a final order. R. 2:2-3(a). We decline to extend Rule 2:9-1(a) to a situation in which a notice of appeal has been improperly filed from an interlocutory order and hold that the trial judge retained jurisdiction of the matter following May 8,2001.

II
To place the issue of ROV's efforts to intervene and exercise the right of redemption in context, it is helpful to understand the tax sale process. The process is designed to enhance the collection of taxes. Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964). When municipal taxes are delinquent for the period stated by statute, a lien arises on the land on which the taxes are assessed, N.J.S.A. 54:5-6, and the municipality may enforce the lien by selling the property as prescribed by statute. N.J.S.A. 54:5-19. The officer holding the sale delivers to the purchaser a certificate of sale. N.J.S.A. 54:5-46.
A tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority. Chelsea Laundry Co. v. Toscano, 14 N.J.Super. 496, 500, 82 A.2d 473 (Ch.Div.1951). Furthermore, the interest of the holder of the tax sale certificate is entirely subordinate to the statutory right of redemption of the property owner. This right of redemption can be exercised up to the date fixed by the court barring the right of redemption. Manning v. Kasdin, 97 N.J.Super. 406, 417, 235 A.2d 219 (App.Div.1967), certif. denied, 51 N.J. 182, 238 A.2d 469 (1968). See generally, C. Zachary Seltzer, New Jersey Law, Tax Title Foreclosures, 13-213 to -214 (1971).
After two years, the purchaser of the tax sale certificate, his heirs or assigns, may commence a proceeding known as a tax sale foreclosure to foreclose or bar the property owner's right of redemption. N.J.S.A. 54:5-86. The parties to this proceeding are the property owner and the holders of existing interests in the property. Bron, supra, 42 N.J. at 92, 199 A.2d 625. The property owner, his heirs, a holder of any prior outstanding tax lien certificate, mortgagee, or occupant of land sold for municipal taxes, assessment for benefits pursuant to N.J.S.A. 54:5-7 or other municipal charges, may redeem it at any time until the right to redeem has been cut off in the manner prescribed by statute. N.J.S.A. 54:5-54. A judgment of the Superior Court in an action to foreclose the right of redemption may give full relief
to bar the right of redemption and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser.
[N.J.S.A. 54:5-87.]

III
Briefly stated, ROV sought to exercise the right of redemption in three capacities: first, as the assignee of a judgment against Nathan Weissman; second, as a levying judgment creditor and purchaser at a sheriff's sale of Nathan Weissman's one-half interest in the property; and third, as the owner of the property in its entirety following the acquisition of Jane Auster's undivided one-half interest in the property. ROV acquired its various interests after the filing of the complaint to foreclose the *1082 right of redemption. We will initially address ROV's claim that as the assignee of the Makmy judgment, it had a right to redeem because the 1994 amendment to N.J.S.A. 54:5-54 is unconstitutional.
Prior to 1994, N.J.S.A. 54:5-54 permitted the property owner, his heirs, a holder of any prior outstanding tax sale certificate, mortgagee, occupant of the land, or other person having an interest in land sold for municipal liens to redeem it at any time prior to entry of final judgment. In 1994, however, the statute was amended to limit the parties who may redeem. Following the amendment, the final catchall category of "other person having an interest in land" was eliminated. No one questions that ROV, as assignee of the Makmy judgment, fell into the eliminated category. ROV argues that the statutory bar to its right of redemption violates its rights to due process of law.
The trial judge rejected ROV's constitutional challenge. ROV contends that the judge erred in holding that ROV, "a judgment creditor," had "no protectable property interest conferring upon it a right of redemption," because the 1994 amendment to N.J.S.A. 54:5-54 depriving a judgment creditor of a right of redemption constitutes "an unconstitutional impairment of a property right in violation of the due process requirements of the United States and New Jersey Constitutions." Although the application of N.J.S.A. 54:5-54 to judgments obtained before the effective date of the 1994 amendment presents an interesting issue of constitutional law, we need not address the issue. Before the motion judge ruled on its motion challenging the constitutionality of the statute as applied to a judgment creditor, ROV enhanced its position by executing on the judgment and obtaining title through a judicial sale. Indeed, ROV had achieved this position by December 4, two days before the judge deferred consideration of the constitutional challenge and more than two months before the February 13, 2001 decision and order. ROV did not inform the trial judge of its change in status prior to the ruling. At this time, ROV had also initiated actions to acquire the interest of the other tenant in common.
It is well-recognized that a court should not reach and determine a constitutional issue unless that issue is essential to a resolution of the case. Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971); Ahto v. Weaver, 39 N.J. 418, 428, 189 A.2d 27 (1963). Here, ROV quickly and inexpensively altered its position from judgment creditor to owner. Resolution of the issue of the retroactive application of N.J.S.A. 54:5-54 to judgments which predate the effective date of the amendment is not required to resolve this appeal. Moreover, it is quite possible that ROV was not unconstitutionally deprived of any property. It retains its status as a judgment creditor versus Nathan Weissman. ROV lost only the opportunity to execute on that judgment against this specific piece of property. Therefore, we decline to address the issue.

IV
We now turn to ROV's contention that it was entitled to intervene in the foreclosure action because it acquired Nathan Weissman's undivided one-half interest in the property at a judicial sale. On August 28, 2000, Makmy assigned its judgment against Nathan Weissman to ROV. On September 28, 2000, ROV caused the issuance of a writ of execution on the Makmy judgment. A sheriff's sale was conducted on December 4, 2000, at which the sole bidder was ROV. On January 5, 2001, a sheriff's deed was executed conveying the title and interest of Nathan Weissman in the property to ROV. The deed was recorded between January 5 and February 15, 2001.
*1083 It was in this capacity that ROV filed its February 15, 2001 motion requesting an order substituting it as a party defendant in the place of Nathan Weissman and an order vacating the October 20, 2000 order setting the time, place and amount of redemption. This motion was denied on May 3, 2001. The judge invoked that portion of N.J.S.A. 54:5-89.1 which bars intervention and the right to redeem to any party when it acquired its interest in the land for a nominal consideration after the filing of the complaint. Citing the $100 paid by ROV at the sheriff's sale, the judge found that the amount paid for the Weissman interest in the property must be considered nominal consideration. He said:
Application of both nominal consideration tests discussed above yields the same result: the consideration paid by ROV was nominal, and ROV is precluded from redemption by statute [N.J.S.A. 54:5-89.1]. Under the economic realities test, $100 is not roughly equal to $89,600 (the value of the property contended by ROV) or [$880,000] (the value as contended by plaintiff). Under the percentages test, 25% of even the low value of this property would be approximately $22,500. Even if this court were to accept that $6,000 was the actual consideration paid for the interest in the land, rather than the $100 actually paid for the [sheriff's] deed, that sum would still be considered nominal under both tests.
In a footnote to the opinion, the judge remarked:
ROV claims it paid a net consideration of $3,000 to the judgment assigner [Makmy], and that in addition, it paid the legal expenses and the costs to levy upon the judgment, which led to a gross value received by the assignor of $6,000. But, it is not the amount paid for the judgment but the amount paid for an ownership interest in the land which controls.
ROV argues that the judge ignored or overlooked the last clause of section 89.1 which excepts from the intervention bar those who acquired their interest at a judicial sale. Plaintiff acknowledges that section 89.1 does have an exception for interests purchased at a judicial sale but contends that ROV acquired its interest by assignment and utilized the sheriff's sale as a means of cleansing its title. Plaintiff refers to the December 4 sheriff's sale as a "sham."
Section 89.1 does not define the term "judicial sale." We conclude, however, that a sheriff's sale is a judicial sale because it is a designated step in the collection of judgments obtained through the courts of this State. See Boorum v. Tucker, 51 N.J. Eq. 135, 139, 26 A. 456 (Ch. 1893), aff'd o.b. sub nom., Hartshorne v. Boorum, 52 N.J. Eq. 587, 33 A. 50 (E. & A. 1894) (noting that a purchaser at a sheriff's sale under foreclosure proceedings is a purchaser at a judicial sale); Campbell v. Parker, 59 N.J. Eq. 342, 346, 45 A. 116 (Ch.1900) (noting that "a sale by a sheriff, by virtue of a writ directed to him by this court, is a judicial sale").
We conclude that ROV falls within the exception allowed by section 89.1 for after-acquired interests in the property. Nevertheless, we also conclude that its activities violate the spirit of the statute and require imposition of a constructive trust in favor of plaintiff.
N.J.S.A. 54:5-89.1 in its current form is generally acknowledged as the legislative response to Bron, supra, 42 N.J. at 95, 199 A.2d 625, and an unreported opinion of this court which sought to limit Bron. See Wattles v. Plotts, 120 N.J. 444, 450, 577 A.2d 131 (1990). In Bron, the Court condemned as against public policy the attempt, many years later, by the heirs of a prior owner to capitalize on a defect in the initial tax foreclosure action initiated by *1084 the municipality and after the property had been developed and occupied by subsequent residential purchasers. Justice Weintraub said:
[N]o one disputes the right of the holders of existing interests to convey them to third persons if they wish. What is challenged is the legality of the intrusion into the scene by third persons who seek only to further their own interests rather than the interests already on hand. As we have pointed out, the policy of the statute is to support tax titles, a policy which overall is burdened by the conduct before us.... We see no social value or contribution in the activities of [the intervenor]. On the contrary, decent men must sense only revulsion in this traffic in the misfortunes of others.

[Id. at 95, 199 A.2d 625.]
Similar sentiments were expressed by the Court in Wattles, supra, and O & Y Old Bridge Development Corp. v. Continental Searchers, Inc., 120 N.J. 454, 458, 577 A.2d 137 (1990), and by the Legislature when it adopted the 1967 amendments to N.J.S.A. 54:5-89.1.
As to those amendments with which we are concerned in this case, Justice Pollock noted:
[T]he Legislature censured heir hunting [and title raiders] because it hinders tax sales, thereby disturbing the collection of unpaid taxes. Furthermore, by taking advantage of the expenses incurred by the foreclosing party, the heir hunter creates a windfall.
* * *
Nothing in the statute, however, undercuts Bron. Although the statute might have been drawn more broadly to achieve its stated purpose, the operative provisions are consistent with the public policy declared in Bron. That policy supports tax titles and opposes the intrusion in tax-foreclosure proceedings "by third persons who seek only to further their own interests rather than the interests already on hand." 42 N.J. at 95, 199 A.2d 625.... As the statement accompanying the legislation makes clear, the Legislature enacted N.J.S.A. 54:5-89.1 not to limit Bron, but to counteract an unreported Appellate Division opinion that failed to stop the practice of heir hunting "on equitable grounds." Statement Accompanying Sen. No. 291, L. 1967, c. 149. We conclude, therefore, that rather than undermining Bron, as defendants contend, N.J.S.A. 54:5-89.1 reinforced its policies.

[Wattles, supra, 120 N.J. at 452, 577 A.2d 131.]
In many discussions of tax-foreclosure proceedings, we are reminded of the narrow scope of the interests involved in the foreclosure process. For example, in Bron the Court observed "the foreclosure process concerns only the holder of the tax sale certificate and the holders of existing interests in the property." Bron, supra, 42 N.J. at 92, 199 A.2d 625. Accord, Lato v. Rockaway Tp., 16 N.J. Tax 355, 364 (1997). This reminder assists our resolution of the equities in this case.
To be sure, this case does not present the situation of a third party who seeks to capitalize on a mistake made decades ago as in Bron and O & Y Old Bridge. It is closer to the situation in Wattles in which the holder of a tax sale certificate filed a foreclosure action years after acquiring the tax sale certificate. This case also does not involve long-lost heirs. Nathan Weissman and Jane Auster were still living and readily discovered in California, albeit with considerable assistance of plaintiff's pre-complaint investigation. Notably, the Court has observed that the activities of title raiders also fall within the proscription of Bron. O & Y Old Bridge, supra, 120 N.J. at 458, 577 A.2d 137. As in Bron and Wattles, ROV has insinuated itself into *1085 the proceedings after the complaint was filed for the sole purpose of furthering its own pecuniary interests. ROV expended only $3100, the cost of the assignment of the judgment and the amount bid at the sheriff's sale. The record reveals that the property has been estimated by some to be worth almost $900,000. ROV's attempt to intervene thwarts the utility of tax sales, just as did the heir hunting in Bron and O & Y Old Bridge, by frustrating the reasonable expectations of those who purchase tax sale certificates and ultimately advance no interest other than its own speculative venture. See Wattles, supra, 120 N.J. at 453, 577 A.2d 131.
In cases in which the Court has found that the activities of parties beyond the holders of existing interests violate the principles of Bron and N.J.S.A. 54:5-89.1, the Court has resorted to the remedy of the constructive trust. Wattles, supra, 120 N.J. at 453-54, 577 A.2d 131; O & Y Old Bridge, 120 N.J. at 458-59, 577 A.2d 137; Bron, supra, 42 N.J. at 95-96, 199 A.2d 625. As in Bron, Wattles, and O & Y Old Bridge, we impose a constructive trust on ROV's interest in favor of plaintiff. The most ROV can claim is the return of the $3100 it paid to obtain its title interest in the undivided one-half interest in the property held by Nathan Weissman. Upon payment of $3100 plus simple interest, plaintiff is entitled to that interest.

V
Finally, we address ROV's contention that its attempt to redeem the property following its acquisition of the Auster interest should not have been rebuffed and the provisions of N.J.S.A. 54:5-89.1 do not apply to ROV. It acknowledges that it acquired the Nathan Weissman and Jane Auster interests in the property after the filing of the complaint. It argues, however, that section 89.1 governs the right to intervene in a tax sale foreclosure action and does not extend to bar the right of redemption of an owner.
Final judgment barring the right of redemption was entered on July 6, 2001. In June 2001, ROV attempted to redeem the property based on the right of redemption derived from the title acquired from Jane Auster. Actually, when ROV acquired Jane Auster's interest in the property, it became the owner of the entire fee, having previously obtained all interest in the property formerly held by Nathan Weissman.
N.J.S.A. 54:5-54 provides that "the owner... of land sold for municipal taxes ... may redeem it at any time until the right to redeem has been cut off ... by paying to the collector ... the amount required for redemption." Furthermore, N.J.S.A. 54:5-86 provides the right to redeem continues until barred by judgment of the Superior Court. ROV's argument, however, ignores the terms of N.J.S.A. 54:5-98 which provides that "[a]fter the complaint has been filed redemption shall be made in that cause only, provided notice of the suit has been filed in the office of the tax collector." Thus, ROV's attempt to end run the foreclosure proceeding and avoid the adverse rulings governing its prior attempts to intervene was barred by statute. Indeed, to allow a party which obtains an interest in the property after the filing of the complaint to proceed directly to the tax collector would totally frustrate the public policy of this State as announced by the Supreme Court and codified by the Legislature. Therefore, we reject ROV's contention that N.J.S.A. 54:5-89.1 did not extend to it following its acquisition of the Auster interest in the property.[1]
Albeit for different reasons and with the exception of the constructive trust imposed *1086 on the Nathan Weissman interest obtained by ROV in favor of plaintiff, we affirm as modified the February 13 and May 3, 2001 orders and the July 6, 2001 final judgment. We remand the matter to the general equity judge for entry of an amended final judgment.
Affirmed as modified.
NOTES
[1] ROV notified the judge that it had acquired Auster's interest in the property but never sought to intervene in the foreclosure proceeding. Thus, the judge never had to consider whether the $3000 paid to Auster was nominal consideration. Accordingly, we do not rule on this issue, although we note that the Supreme Court has held in the past that a sum paid to the heir or owner which is disproportionate to the windfall the heir hunter or title raider seeks to reap and to the value of the tract is a hallmark of the activities condemned by the Supreme Court and the Legislature. O & Y Old Bridge, supra, 120 N.J. at 458, 577 A.2d 137.