577 A.2d 137

O & Y OLD BRIDGE DEVELOPMENT CORP., A NEW JERSEY CORPORATION, AND CHICAGO TITLE INSURANCE COMPANY, PLAINTIFFS–RESPONDENTS, v. CONTINENTAL SEARCHERS, INC., A NEW JERSEY CORPORATION, DEFENDANT–APPELLANT.

CONTINENTAL SEARCHERS, INC., A NEW JERSEY CORPORATION, PLAINTIFF–APPELLANT, v. OLD BRIDGE DEVELOPMENT CORP., A NEW JERSEY CORPORATION, AND ARTHUR BROWN, DEFENDANTS–RESPONDENTS.

Argued January 18, 1990—Decided July 25, 1990.

*Richard O. Venino* argued the cause for appellant (*Michael M. Land,* attorney, *Richard O. Venino, Michael M. Land,* and *Leonard H. Wallach,* on the briefs).

*Arnold K. Mytelka* argued the cause for respondents (*Clapp & Eisenberg,* attorneys, *Arnold K. Mytelka* and *John R. Lloyd,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

In *Wattles v. Plotts,* 120 *N.J.* 444, 577 *A.*2d 131 (1990), decided today, we imposed a constructive trust for the benefit of a tax-sale certificate holder on the interest of an heir hunter that had located heirs interested in the property covered by the certificate. This action involves an attempt by an heir hunter, defendant, Continental Searchers, Inc. (Continental), to upset title to property now owned by plaintiff O & Y Old Bridge Development Corp. (O & Y). Title to the property had been quieted in a 1957 proceeding that Continental claims was defective.

The Chancery Division entered a final judgment declaring that Continental had no interest in the property and that O &

Y's title was good. In an unreported opinion, the Appellate Division affirmed. We granted Continental's petition for certification, 118 *N.J.* 229, 570 *A.*2d 981 (1989), and now modify and affirm the judgment of the Appellate Division.

I

The property is a 44.36–acre parcel in Old Bridge (formerly Madison Township), Middlesex County, that O & Y acquired in four separate conveyances as part of the development of a 2,600–acre tract. Title to all four parcels may be traced to a common grantor, Arthur Brown, who was the immediate grantor of one of the parcels and the mesne grantor of the other three. At one time, Brown's grandfather, William J. Morrell, apparently owned the property, but no deed in Morrell's name was of record in Middlesex County. Until the 1950s, however, Old Bridge listed Morrell or his estate as the owner. Brown has lived his entire life on adjacent property, and formerly maintained a garden on the property in question. After the death of his grandparents, Brown began to pay the real estate taxes "to hold the property."

Brown consulted the tax collector about clearing the title. On the tax collector's advice, Brown stopped paying taxes for two years. On January 16, 1953, he purchased a tax-sale certificate on the property. He then consulted an attorney who was familiar with the long involvement of Brown's family with the property. In 1957, believing that Brown was in peaceable possession of the property and that he met the other requirements of *N.J.S.A.* 2A:62–1, the attorney proceeded with a quiet-title action, instead of an action to foreclose the tax-sale certificate pursuant to the Tax Sale Law, *N.J.S.A.* 54:5–1 to –129. Included among the named defendants was one Henry A. Moore, a former record holder from New York. Moore was one of Morrell's predecessors in title, and in 1891 had leased the property to John and Irene Morrell. The record does not indicate the relationship between John and Irene Morrell and

William J. Morrell. Also joined were Moore's heirs and others. The attorney, with the help of New York counsel, searched in vain for Moore and his heirs. No defendant appeared, and in 1958 the Chancery Division entered a judgment by default. The judgment quieted title in favor of Brown and adjudicated that Moore and his heirs had no interest in the property.

Unfortunately for O & Y, Brown, as it now turns out, had not satisfied the requirement of peaceable possession necessary for a quiet-title action. Among other requirements for such an action, the party seeking relief must have been assessed and must have paid the taxes for five consecutive years immediately prior to suit. *N.J.S.A.* 2A:62–2.

Through searching title on a nearby property, Continental learned of the defect in Brown's title. Sensing an opportunity, it offered to "clear up the title" for O & Y. That was the second time that Continental had solicited O & Y. Previously, Continental had learned of another outstanding interest in the 2,600–acre tract, had obtained a quitclaim deed for an outstanding interest, and then had sold its interest to O & Y for $37,000.

O & Y declined Continental's offer. Continental then conducted a multi-state search and discovered an heir of Moore located in Florida, one Clarence Bouck. The heir, who did not know that he had an interest in the property, sold Continental a quitclaim deed for $300 and a promise of an additional $2,700 if Continental succeeded in obtaining title.

On September 12, 1984, both Continental and O & Y filed complaints seeking to quiet title and other relief. Brown, as well as Chicago Title Insurance Company, which insured the title for O & Y, joined O & Y in its action.

## II

Arguably, Brown's 1958 quiet-title judgment is invulnerable under *Rule* 4:50 to Continental's attack twenty-six years later. If so, that judgment would protect O & Y from Continental's suit. The lower courts, however, resolved this matter on the

premise that *Bron v. Weintraub,* 42 *N.J.* 87, 199 *A.*2d 625 (1964), deprived Continental of a protectible interest. Neither of those courts considered the effect of the 1958 judgment on Continental's interest. Although the issue was briefed in the Appellate Division, that court did not consider it, and neither party raised it before us. As the Appellate Division stated, "[t]he issue before us, however, is whether Continental's resultant claim of title, acquired solely to force a purchase by O & Y to protect their surrounding development, can stand against the assertion that its claim violated the *Bron* principles."

Having so framed the issue, the Appellate Division saw "no valid distinction between *Bron* and this case based upon the fact that the property in question is undeveloped land rather than residential housing. Neither do we distinguish this case from *Bron* on the basis that plaintiff is a developer rather than a single homeowner." Instead, the court agreed with the Chancery Division that "Continental falls within the proscriptions of *Bron v. Weintraub.*"

As stated in *Bron, supra,* 42 *N.J.* at 95, 199 *A.*2d 625, we find no social value or contribution in the "activities" of heir hunters or title raiders who "seek only to further their own interests rather than the interests already on hand." Here, as in *Bron,* the sum paid to the missing heir is disproportionate to the windfall that the heir hunter seeks to reap. In *Bron,* the heir hunter paid a total of $400 for an interest in land worth thousands of dollars; here, Continental paid $300 with a contingent promise of an additional $2,700 for an asserted interest in property that is part of a tract worth millions. Although Brown's attorney may have erred in the original quiet-title action, "decent men must sense only revulsion in this traffic in the misfortune of others." *Ibid.*

As in *Bron* and in *Wattles,* we find that the appropriate remedy is to impose a constructive trust on the heir hunter's interest. Thus, we impose a constructive trust in favor of O & Y on the interest Continental had acquired from the heir of

Henry A. Moore. As the Appellate Division noted, "[t]he most Continental can claim under the *Bron* principles is the return of its meager investment in exchange for the 'title' it holds." Assuming that the 1958 judgment did not extinguish the interest now asserted by Continental, O & Y is equitably entitled to that interest on payment of $300 plus simple interest.

As modified, the judgment of the Appellate Division is affirmed.

*For Modification and Affirmance* –Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.