902 A.2d 309

CORESTATES/NEW JERSEY NATIONAL BANK, BY ITS ASSIGNEE SCHAEFER SALT RECOVERY, INC., PLAINTIFF–APPELLANT, v. CHARLES SCHAEFER SONS, INC. A NEW JERSEY CORPORATION, SCHAEFER PROPERTIES, INC., A NEW JERSEY CORPORATION, CHARLES F. BOEDDINGHAUS, III, JUDY L. BOEDDINGHAUS, JAMES K. BARBOUR, AND CAROLE BARBOUR, DEFENDANTS.

CORESTATES/NEW JERSEY NATIONAL BANK, BY ITS ASSIGNEE SCHAEFER SALT RECOVERY, INC., PLAINTIFF–APPELLANT, v. CHARLES SCHAEFER SONS, INC., A NEW JERSEY CORPORATION, SCHAEFER PROPERTIES, INC., A NEW JERSEY CORPORATION, JAMES K. BARBOUR, CAROL BARBOUR, CHARLES F. BOEDDINGHAUS, III, JUDY L. BOEDDINGHAUS, THE STATE OF NEW JERSEY, THE UNITED STATES OF AMERICA, AND THE DOW CHEMICAL CO., DEFENDANTS.

CAROL SEGAL, BY HER ASSIGNEE SHERWOOD GROUP ASSOCIATES, PLAINTIFF–RESPONDENT, v. JAMES K. BARBOUR, DEFENDANTS.

CAROL SEGAL, BY HER ASSIGNEE SHERWOOD GROUP ASSOCIATES, PLAINTIFF–RESPONDENT, v. SCHAEFER PROPERTIES, INC., ICC CHEMICAL CORPORATION, PRIOR CHEMICAL CORPORATION, AND STATE OF NEW JERSEY, DEFENDANTS, AND SCHAEFER SALT RECOVERY, INC. ASSIGNEE OF FIRST UNION NATIONAL BANK F/K/A THE NATIONAL STATE BANK OF ELIZABETH, NJ N/K/A WACHOVIA BANK, DEFENDANT–APPELLANT.

CAROL SEGAL, PLAINTIFF–RESPONDENT, v. CHAS. SCHAEFER SONS, INC., FIRST UNION NATIONAL BANK, VIMAX INDUSTRIES, INC., RENFRT–DIANA OF NEW YORK, INC., TAKEDA, U.S., INC., OCCIDENTAL CHEMICAL, CONSOLIDATED RAIL CORP., ICC CHEMICAL CORPORATION, PRIOR CHEMICAL CORPORATION, THE DOW CHEMICAL COMPANY, STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 19, 2005—Decided July 20, 2006.

Before Judges A.A. RODRÍGUEZ, C.S. FISHER and YANNOTTI.

*Robert A. Pinel* argued the cause for appellant Schaefer Salt Recovery, Inc., assignee of Corestates/New Jersey National Bank (*Stern, Lavinthal, Frankenberg & Norgaard,* attorneys; *Nicholas Khoudary* and *Mr. Pinel,* of counsel and on the brief).

*Michael G. Pellegrino* argued the cause for respondents Sherwood Group Associates and Carol Segal (*Casale & Pellegrino,* attorneys; *Mr. Pellegrino,* on the brief).

The opinion of the court was delivered by

RODRÍGUEZ, A.A., P.J.A.D.

In this appeal we are required to consider the standard for determining what constitutes "nominal consideration" within the meaning of *N.J.S.A.* 54:5–89.1, the "title raiding," "heir hunting" or "intermeddler" provision of *N.J.S.A.* 54:5–1 to –137, the "tax sale law." Determining what constitutes nominal consideration in

this context has proven troublesome for trial courts. We hold, consistently with the tax sale law, *Bron v. Weintraub*, 42 *N.J.* 87, 199 *A.*2d 625 (1964), *Wattles v. Plotts*, 120 *N.J.* 444, 577 *A.*2d 131 (1990) and *O & Y Old Bridge Dev. Corp. v. Cont'l Searchers, Inc.*, 120 *N.J.* 454, 577 *A.*2d 137 (1990), that in order to decide the issue, the trial court must compare the consideration paid for the interest against the current value and marketability of the property interest acquired, less legitimate expenses of redemption and other pertinent adjustments. Then, the judge must decide if the resulting figure is a "windfall" or merely a reasonable return on investment.

I

In 1985, Schaefer Properties, Inc. (SPI), the owner of commercial real estate in Union County, mortgaged the property as security for a loan from the New Jersey Economic Development Authority. Through successive mergers or assignments, Corestates/New Jersey National Bank (Corestates) became the holder of that mortgage.[1] In 1995, SPI defaulted on the mortgage. At the time, the amount due on the mortgage was $5,672,803.34. Corestates filed a mortgage foreclosure action (docket F–15886–94). The action was unopposed. On September 11, 1995, Judge John M. Boyle ordered a sale pendente lite of the property. However, this remedy was not pursued. Apparently, the property has environmental problems that require remediation.

Prior to the foreclosure action, Corestates filed an action against SPI seeking a receivership and other relief (docket C–164–94). A default judgment in the amount of $5,708,965.81 was entered in this action. In 1999, Corestates assigned the mortgage and money judgment to Huskie Portfolio, Inc. (Huskie).

---

[1] The original mortgage was assigned to National State Bank of Elizabeth, which became Corestates. Corestates became First Union National Bank and later Wachovia Bank, National Association. For the sake of clarity, all of these mortgagees are referred to as "Corestates" in this opinion.

In addition to the default on the mortgage, SPI was not paying taxes when due. Carol Segal and her successor in interest, Sherwood Group Associates, (collectively "Segal") purchased a tax sale certificate on the property. Subsequently, Segal acquired additional tax sale certificates for the same property. All of these certificates were duly recorded. No redemption occurred during the two-year period set by *N.J.S.A.* 54:5–52. Therefore, Segal filed a notice of intent to foreclose and served a copy of this notice on all parties, including Corestates. Thereafter, Segal filed three separate tax foreclosure actions (dockets F–18075–33, F–17783–99, and F–18078–99). Default was entered in these actions. The judge set May 3, 2004 as the date for redemption on the foreclosure for docket F–18075–33. No redemption occurred by that date.

On May 5, 2004, two days after the date of redemption had passed, Schaefer Salt Recovery, Inc. (Recovery) purchased from Huskie the Corestates mortgage and the money judgment for $220,000.[2] At the time of that purchase, $8 million was due on the mortgage. On July 6, 2004, Recovery filed an answer to Segal's tax foreclosure complaints without moving to vacate the defaults. Recovery also asserted its right to redeem the tax certificates because final judgment had not been entered. The amount of redemption had grown to $1.9 million. However, Recovery did not allege that it had the funds available.

Segal moved to strike Recovery's untimely answer. On August 13, 2004, the trial judge entered an order striking the answer. Recovery moved to intervene in the tax foreclosure matters, alleging that the Union Township Tax Collector had improperly assessed the subject property and issued incorrect tax bills. Recovery also moved: (1) to vacate the defaults; (2) to consolidate the tax foreclosure suits with the mortgage foreclosure and the

---

[2] Recovery alleges that it purchased the mortgage for $220,000. However, that allegation is challenged by Segal because proof of the consideration paid has not been provided.

money judgment suits; and (3) for authorization to conduct a pendente lite sale pursuant to Judge Boyle's order. Recovery presented to the judge an affidavit by Joanne Faber, a developer, who indicated that she had contracted to purchase the property for $3 million.

The judge denied the application and stayed a Sheriff's sale that was scheduled for August 16, 2004 in execution of the Corestates mortgage foreclosure pursuant to Judge Boyle's order. In a written opinion, the judge ruled that Recovery would not be allowed to enforce the prior mortgage foreclosure order because Segal's judgment had priority. The judge found that, although Corestates had obtained the 1995 order by Judge Boyle allowing it to sell the property, neither it nor its successors ever pursued this remedy. Therefore, this right was abandoned. Moreover, Recovery was aware of Segal's foreclosure actions and the expiration of the redemption period when it acquired the mortgage. The judge imposed a constructive trust on the property in the amount of $220,000 in favor of Recovery, pursuant to *Savage v. Weissman,* 355 *N.J.Super.* 429, 442, 810 *A.*2d 1077 (App.Div.2002), upon proof that Recovery had paid that amount for the assignment of Corestates' mortgage.

The judge ruled that Recovery's attempt to raise the defense that the amount of outstanding taxes was incorrect was time-barred by *N.J.S.A.* 54:5–52, which requires that such a defense to a tax certificate foreclosure be raised within two years of recordation of the certificate. The judge also concluded that Recovery was barred from its right of redemption by virtue of *N.J.S.A.* 54:5–89.1. The judge found that the consideration paid by Recovery after the filing of the complaint was nominal in relation to the value of the property. In reaching this decision, the judge noted that the parties "agree that . . . the property is worth at least $3.5 million (even with environmental problems)," and compared this value to the $220,000 paid by Recovery. The judge concluded that the resulting 6.28 percent ratio indicated that the consideration was nominal.

Following this ruling, another judge entered final judgments on the three tax foreclosure actions brought by Segal. Recovery filed this appeal and moved for emergent relief. We denied the application.[3]

## II

Recovery contends that the judge erred by finding that the consideration paid for the assignment of the mortgage was nominal. We conclude that the record is insufficient to make a decision on this point, and reverse for determination of the issue in accordance with this opinion.

We begin our analysis with a quick review of the governing principles. When municipal taxes are delinquent for a certain period, the municipality may enforce the lien resulting by virtue of *N.J.S.A.* 54:5-6 by selling a tax sale certificate pursuant to *N.J.S.A.* 54:5-19. *Savage, supra,* 355 *N.J.Super.* at 436, 810 *A*.2d 1077. Such tax sale certificates create a first priority lien that is subject only to the statutory right of redemption. *Ibid.; Manning v. Kasdin,* 97 *N.J.Super.* 406, 417, 235 *A*.2d 219 (App.Div. 1967), *certif. denied,* 51 *N.J.* 182, 238 *A*.2d 469 (1968). "The primary intent of the [tax sale law] is 'to enable governments to realize taxes by returning property to the paying tax rolls without first expending money to foreclose or bar the equity of redemption.'" *Varsolona v. Breen Capital Serv. Corp.,* 180 *N.J.* 605, 621, 853 *A*.2d 865 (quoting *Simon v. Deptford Twp.,* 272 *N.J.Super.* 21, 26, 639 *A*.2d 328 (App.Div.), *certif. denied,* 137 *N.J.* 310, 645 *A*.2d 139 (1994)); *Monroe Twp. Mun. Util. Auth. v. Consol. Apartments, Inc.,* 386 *N.J.Super.* 134, 140, 899 *A*.2d 337 (App.Div.2006). After holding the tax sale certificate for two years, its holder, heirs or assigns, may bring a tax sale foreclosure action. *Savage, supra,* 355 *N.J.Super.* at 436, 810 *A*.2d 1077 (citing *N.J.S.A.* 54:5–86). "The parties to this proceeding are the property owner and

---

[3] *Corestates/New Jersey National Bank v. Charles Schaefer, Sons, et al.* No. M–1365–04 (App.Div. December 10, 2004).

the holders of existing interests in the property." *Bron, supra,* 42 *N.J.* at 92, 199 *A.*2d 625.

As we have observed, "the real incentive for participation in a tax sale is the potential to secure marketable title in a foreclosure action." *Simon v. Rando,* 374 *N.J.Super.* 147, 153, 863 *A.*2d 1078 (App.Div.), *certif. granted,* 183 *N.J.* 585, 874 *A.*2d 1104 (2005). The purpose of the tax sale law is "to enhance the collection of taxes." *Id.* at 152, 863 *A.*2d 1078. It is also obvious that although "wide public participation at the time of the public sale furthers the purpose of the law, intrusion after the commencement of an action to foreclose thwarts that purpose." *Id.* at 153, 863 *A.*2d 1078 (citing *Bron, supra,* 42 *N.J.* at 92, 95, 199 *A.*2d 625; *Wattles, supra,* 120 *N.J.* at 448–53, 577 *A.*2d 131). That is so because "[p]ost-complaint trading in redeemable interests does not enrich the municipal treasury; it only serves the interests of the person who acquires the interest." *Simon, supra,* 374 *N.J.Super.* at 153, 863 *A.*2d 1078; *Wattles, supra,* 120 *N.J.* at 448–53, 577 *A.*2d 131.

The general rule is that the right to redeem can be exercised by the owner of the property or a lien holder until such interest is "barred by the judgment of the Superior Court." *N.J.S.A.* 54:5–86. However, *N.J.S.A.* 54:5–89.1 provides an exception to the general rule. That section of the tax sale law provides that a person claiming an interest in property by means of a recorded document such as an assignment of a mortgage "may apply to be made a party to [a tax foreclosure] action," subject to the following exception:

> No person, however, shall be admitted as a party to such action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint.
>
> [*N.J.S.A* 54:5–89.1.]

This provision is often called the "title raider," "heir hunting" or "intermeddler" provision of the tax sale law. It was added to the statute by means of a 1967 amendment, which was designed "to curb a very questionable scheme that has recently been carried on in a wholesale fashion ... to the disadvantage of plaintiffs (munici-

palities and individuals, alike) in tax foreclosure actions." *Wattles, supra,* 120 *N.J.* at 450–51, 577 *A.2d* 131 (citing *Sponsor's Statement to Sen. No. 291, L.1967, c. 149* ). Both the Supreme Court and the Legislature have condemned the practice, which was described by the Legislature as follows:

> The scheme of these intermeddlers is simple. They permit the purchaser of the tax sale certificate to invest his capital, hold the line for the statutory period, engage counsel to examine the title, make inquiry as to the whereabouts of the defendants, their heirs, devisees, and personal representatives, prosecute the case up to the point of completion, and upon being satisfied at that time that the defendants do not intend to redeem, such intermeddlers offer the defendants a nominal sum for a deed and they thereupon step into the shoes of the purchaser of the lien. At that stage they find the defendants very amenable to any suggestion that they might make because they have nothing to lose—the defendants have already determined to abandon their interests. In the meantime, the intermeddlers have made no investment of any kind and fully exploit the professional services of the attorney for the plaintiff at little or no cost. Obviously, this imposes a loss on the purchaser of the tax sale certificate.
>
> [*Ibid.*]

The Legislature characterized the practice as "iniquitous" and "a burden on the purpose of the Tax Sale Revision, namely, the collection of revenue." *Ibid.* The Legislature predicted, "no one will purchase at tax sales under these conditions." *Ibid.*

In *Bron, supra,* 42 *N.J.* at 95, 199 *A.2d* 625, the opinion that prompted the 1967 amendment, the Supreme Court explained why the practice was disfavored:

> What is challenged is the legality of the intrusion into the scene by third persons who seek only to further their own interests rather than the interests already on hand. As we have pointed out, the policy of the statute is to support tax titles, a policy which overall is burdened by the conduct before us. The burden upon individuals situated as are the [plaintiffs] in this case is evident enough. These manifest hurts should not be tolerated unless it can be said that some other legitimate interest or advantage is served. We find none. We see no social value or contribution in the activities of [the intermeddler]. On the contrary, decent men must sense only revulsion in this traffic in the misfortunes of others.
>
> [*Ibid.*]

Thus, the Court focused on two things: the fact that the intermeddlers "further their own interests rather than the interests already in hand" and the lack of "social value or contribution" in this practice.

There have been a number of variations to this scheme, which have attempted to avoid the bar set by *N.J.S.A.* 54:5–89.1. Our courts have stymied these attempts. *See Wattles, supra,* 120 *N.J.* at 453–54, 577 *A.2d* 131; *O & Y Old Bridge Development Corp., supra,* 120 *N.J.* at 458–59, 577 *A.2d* 137; *Savage, supra,* 355 *N.J.Super.* at 443–44, 810 *A.2d* 1077; *Simon, supra,* 374 *N.J.Super.* at 158–59, 863 *A.2d* 1078; *Town of Phillipsburg v. Block 1508, Lot 12,* 380 *N.J.Super.* 159, 881 *A.2d* 749 (App.Div.2005).

Recovery argues that because the word "nominal" is defined as "minor" or "trivial," the $220,000 consideration it paid does not fit that definition, and cites to *Wattles* for the proposition that nominal consideration in title raiding cases is "usually $25 or $50." *Wattles, supra,* 120 *N.J.* at 451, 577 *A.2d* 131. We disagree with this approach.

There is no bright line test to determine what is nominal consideration. In *Bron, supra,* 42 *N.J.* at 96, 199 *A.2d* 625, the Court held that the purchasers of an interest, who paid $400 for property which at the time had a value of almost $20,000, were intermeddlers because they had only paid nominal consideration. *See also O & Y Old Bridge, supra,* 120 *N.J.* at 458, 577 *A.2d* 137 (concluding that payment of $300, with a contingent promise of $2,700 for a portion of land on a tract worth millions was nominal consideration).

In *Savage, supra,* 355 *N.J.Super.* at 439, 810 *A.2d* 1077, the trial court alluded to a percentages test to determine nominal consideration. However, we did not adopt or apply such test. In fact, we expressly noted that the judge in that case never had to consider whether the consideration paid was nominal and declined to rule on that issue. *Id.* at 443, n. 1, 810 *A.2d* 1077. We noted, in *Savage,* "that a sum paid to the heir or owner, which is disproportionate to the windfall the heir hunter or title raider seeks to reap and to the value of the tract is a hallmark of the [practice] condemned by the Supreme Court." *Ibid.* (citing *O & Y Old Bridge, supra,* 120 *N.J.* at 458, 577 *A.2d* 137). That remains the

test. However, for the guidance of the bench and bar some elaboration is required.

The Court did not define the term "windfall." We conclude, from the language of the *Wattles* and *O & Y Old Bridge* opinions and the intent of *N.J.S.A.* 54:5–89.1, that by "windfall," the Court meant a disproportionate gain after the fair market value of the property, as set by an arm's length sale or appraisal, is reduced by any legitimate expenses in redeeming the property, including the payoff of the tax liens, and costs of environmental remediation. *See Cherokee Equities v. Garaventa,* 382 *N.J.Super.* 201, 212, 887 *A.*2d 1203 (Ch.Div.2005), *certif. granted,* —— *N.J.* —— (March 29, 2006) (holding that in determining whether a purchase is for nominal consideration the trial court must look to the "reasonable value of the interest acquired"). We discern from these authorities an intent to discourage windfalls, not ordinary returns on investments. Depending on the circumstances, the trial court will compare the consideration paid to the market value of the property or to the value of the interest acquired, i.e., the amount due on a mortgage or judgment. The objective of the tax sale law is to prevent a windfall to the intermeddler. Thus, the economic reality of the specific situation presented is what guides the comparison.

Applying that standard to this case, we determine that the record did not establish sufficient facts to find whether or not the consideration paid by Recovery was nominal. For that reason, we remand. The judge must conduct a two-step analysis. First, the judge must make specific findings on the market value of the property, the amount needed to redeem the tax certificates, the costs of remediation and the expenses incurred by Recovery in redeeming the certificates. In addition, because Recovery is not only the assignee of Corestates' mortgage, but also the money judgment, the judge must also consider the collectibility of that judgment. This includes an inquiry into the assets of the judgment debtor or the existence of any personal guarantees for the debt.

Once the judge has determined these amounts, then the judge must determine whether the resulting comparison bespeaks a "windfall." In the context of discussing the unenforceability of unfair contract terms, the Supreme Court defined unconscionability as "an amorphous concept obviously designed to establish a broad business ethic." *Kugler v. Romain,* 58 *N.J.* 522, 543, 279 *A.*2d 640 (1971); *Sitogum Holdings, Inc. v. Ropes,* 352 *N.J.Super.* 555, 566, 800 *A.*2d 915 (Ch.Div.2002). The deviation from business ethics demonstrates how the practice of the intermeddler is lacking in social value or contribution. The approach which must be taken to determine when a windfall exists is similar to the scrutiny that a trial court employs to evaluate whether a contract is unenforceable, i.e., (1) unfairness in the formation of a contract, and (2) excessively disproportionate terms. *Id.* at 564–66, 800 *A.*2d 915.

Here, if the remand judge determines that the consideration is a "windfall," then Recovery's application to join in the tax foreclosure action must be denied by virtue of *N.J.S.A.* 54:5–89.1. If the judge concludes that the consideration paid does not result in a windfall, then Recovery must be allowed to join in Segal's tax foreclosure action.

### III

Recovery contends that in adopting the 1967 amendment to *N.J.S.A.* 54:5–89.1, the Legislature did not intend to bar a tax certificate redemption when a person acquired their interest in an arms length business transaction. Furthermore, Recovery contends that because there are no "heirs" in this case, that there can be no "heir hunting." We disagree. The fact that Corestates and its successors were not "missing heirs," who were unaware of their interest and were not "found" by Recovery is anomalous, but irrelevant. Although the practice is called "heir hunting," *N.J.S.A.* 54:5–89.1 makes no mention of an "heir." An unsuspecting heir, found by the efforts of the intermeddler, is not necessary in order for the statute to apply.

The statute seeks to preclude *any* party from frustrating the public policy goals of tax sale foreclosures. The fact that this is an arm's length transaction does not cure the problem. Moreover, the missing heirs in *Bron, O & Y,* and *Savage,* were involved in an arm's length transaction with their intermeddlers. The key issue is whether nominal consideration was paid.

## IV

■ Recovery also contends that *N.J.S.A.* 54:5–89.1 is preempted by federal law when it regulates the sale and transfer of mortgages from a federal bank. This issue is raised for the first time on appeal. Therefore, it must be considered against the standard set by the Supreme Court in *Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). There the Court held that:

> It is well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentment is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'
>
> [*Ibid.* (quoting *Reynolds Offset Co. Inc. v. Summer,* 58 *N.J.Super.* 542, 548, 156 *A.*2d 737 (App.Div.1959) *certif. denied,* 31 *N.J.* 554, 158 *A.*2d 453 (1960)).]

The specific issue of the applicability of *N.J.S.A.* 54:5–89.1 to a mortgage involving a federal bank has not been raised in prior litigation. Therefore, we do not deem it to be a matter of "great public interest." Accordingly, because this issue was not raised at trial, and it is not a matter of great public concern, we will not consider it on appeal.

## V

Recovery raises two additional issues: that the judge erred by not allowing Recovery to redeem the taxes, and by not consolidating the five cases regarding the property. Resolution of these contentions must await the determination on remand as to whether or not Recovery paid nominal consideration for the assignment of Corestates' mortgage. If the remand court determines that the consideration paid was nominal, Corestates is barred from joining

the tax foreclosure actions because the tax sale law provides different rules for redemption after a foreclosure complaint is filed. *N.J.S.A.* 54:5–98 provides for judicial oversight of redemption by limiting the right to redeem to persons who are parties to the foreclosure action. *Savage, supra,* 355 *N.J.Super.* at 443, 810 *A.*2d 1077. The statute provides that, "after the complaint has been filed redemption shall be made in that cause only." *N.J.S.A.* 54:5–98. The court then enters an order fixing the amount, time and place for redemption which must be served on all parties. *R.* 4:64–1(d); *R.* 4:64–6(b). Thus, "where default is entered against a person holding a recorded interest, that party is named as a defendant in the court's order of redemption and should that party redeem, he or she redeems 'in that cause.'" *Simon, supra,* 374 *N.J.Super.* at 154, 863 *A.*2d 1078.

■ Here, the judge ruled that once default is entered, there is no right to redeem. This is incorrect. *N.J.S.A.* 54:5–86 provides that the right of redemption is not foreclosed until final judgment is entered. *See Borough of Wildwood Crest v. Smith,* 210 *N.J.Super.* 127, 133, 509 *A.*2d 252 (App.Div.), *certif. denied,* 107 *N.J.* 51, 526 *A.*2d 139 (1986). Final judgment on Segal's tax foreclosure had not been entered when Recovery sought to redeem. Therefore, Recovery would be entitled to redeem the tax sale certificates, provided it was not barred from doing so by *N.J.S.A.* 54:5–89.1.

## VI

Accordingly, we reverse that portion of the August 13, 2004 order that struck Recovery's answer, and remand for an evidentiary hearing to determine whether the consideration paid by Recovery is "nominal" within the meaning of *N.J.S.A.* 54:5–89.1. If the trial court finds that the consideration is nominal, then Recovery is not permitted to participate in the tax foreclosure action. As such, it cannot redeem Segal's interest because, "such redemption is not 'made in the cause.'" *Simon, supra,* 374 *N.J.Super.* at 154, 863 *A.*2d 1078 (citing *N.J.S.A.* 54:5–98). On the other hand, if the

court determines that the consideration paid is not nominal, it may allow Recovery to join the tax foreclosure action. In that case, Recovery may redeem the tax sale certificates. Therefore, consolidation of the five actions would be moot.

Reversed and remanded. We do not retain jurisdiction.