NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5385-15T2

FWDSL & ASSOCIATES, LP,

       Plaintiff-Appellant,

   v.

RICHARD BEREZANSKY, DONNA
BEREZANSKY, wife of Richard
Berezansky, and STATE OF NEW
JERSEY,

       Defendants,

   and

BANDI PROPERTY GROUP, LLC,

       Intervenor-Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| December 5, 2017 |
| APPELLATE DIVISION |

———————————————————

Argued November 14, 2017 — Decided December 5, 2017

Before Judges Fisher, Fasciale and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. F-033373-15.

Keith A. Bonchi argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Bonchi, of counsel and on the brief; Elliott J. Almanza, on the brief).

Michael Burns argued the cause for respondent (Burns & Isen, LLC, attorneys; Mr. Burns, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Following the Supreme Court's admonition more than fifty years ago that "heir hunting" was of "no social value," <u>Bron v. Weintraub</u>, 42 <u>N.J.</u> 87, 95 (1964), the Legislature amended the applicable statutes in a way that prohibited, as the Court later observed, "anyone from becoming a party to a tax-foreclosure proceeding or from exercising the right to redeem" if that person's interest in the property was "acquired for a nominal consideration," <u>Wattles v. Plotts</u>, 120 <u>N.J.</u> 444, 450 (1990). More recently, the Supreme Court recognized that the Tax Sales Law[1] "does not prohibit a third-party investor from redeeming a tax sale certificate" so long as the investor "pays the property owner more than nominal consideration for the property." <u>Simon v. Cronecker</u>, 189 <u>N.J.</u> 304, 311 (2007). Against that backdrop, we reject the foreclosing plaintiff's contention that <u>Cronecker</u> renders unlawful profit-sharing agreements like that formed between the intervenor and the property owners here, as well as its argument that the former only obtained title and a right to redeem by providing the latter with only nominal consideration.

---

[1] <u>N.J.S.A.</u> 54:5-1 to -137.

At a 2013 auction, plaintiff FWDSL & Associates purchased a tax sale certificate on Richard and Donna Berezansky's Manville home. After waiting the required two years and paying all accruing municipal taxes, plaintiff filed a foreclosure complaint in October 2015 against the Berezanskys, as well as the State of New Jersey, which possessed a $70,000 judgment against Richard Berezansky. On February 25, 2016, the court entered an order setting the date, time, and place for redemption. The following month, prior to the expiration of the time for redemption, Bandi Property Group — claiming it held title and was a party to a profit-sharing agreement with the Berezanskys — moved to intervene and redeem.

In so moving, Bandi first explained how it came to be involved with the property. Bandi claimed it learned from public records that: the "equalized assessed value of the [p]roperty is $314,792.13"; the property was encumbered by approximately $43,000 in tax liens; and the State's $70,000 judgment against Berezansky was the "only other known judgment" with a potential to affect title. Bandi explained it had offered to purchase the property from the Berezanskys and described the discussions leading up to its eventual financial arrangement with the Berezanskys.

Because the Berezanskys advised they could not afford to pay off the outstanding tax lien, Bandi proposed a profit-sharing

agreement in exchange for Bandi's "satisf[action] [of] all liens and judgments affecting title" and payment to the Berezanskys of $10,000. To obtain clear title, Bandi agreed, by way of a profit-sharing agreement, to "improve the [p]roperty to maximize its resale value" and "cause the property to be sold at a price reflecting the fair market value." Bandi also agreed to give the Berezanskys "a rent-free use and occupancy period through July 2, 2016." Once the property sold, and "certain fixed expenses . . . deducted," the net proceeds would be divided: thirty-five percent to Bandi and sixty-five percent to the Berezanskys.

Chancery Judge Margaret Goodzeit concluded, in a thorough and well-reasoned written decision, that the consideration given by Bandi for and the benefits obtained by the Berezanskys from the profit-sharing agreement were not nominal. Plaintiff appeals the order entered in Bandi's favor, arguing, among other things, that the judge should not have found the profit-sharing agreement lawful within the meaning of the legal authorities cited in the opening paragraph of this opinion because:

> I. THE PROFIT[-]SHARING AGREEMENT MODEL IS CONTRARY TO PUBLIC POLICY.
>
> II. THE CONSIDERATION FROM BANDI IS ILLUSORY AND ULTIMATELY PAID FOR BY DEFENDANTS OUT OF THEIR OWN EQUITY.
>
> III. IT IS IMPOSSIBLE TO KNOW HOW MUCH 65% OF NET PROCEEDS WILL COME TO, HENCE IT IS

4                                                        A-5385-15T2

> IMPOSSIBLE TO CONDUCT A MEANINGFUL NOMINAL
> CONSIDERATION ANALYSIS.
>
> IV. THE OUTCOME IN THIS CASE SHOULD BE
> CONTROLLED BY <u>WATTLES</u>, AND THE TRIAL COURT
> ERRED IN CONCLUDING OTHERWISE.[2]

We reject these arguments.

<u>N.J.S.A.</u> 54:5-89.1 bars a party from intervening in a tax foreclosure action when claiming a right in the property that was acquired "for a nominal consideration." In considering the effect of this statute and the profit-sharing agreement on this foreclosure action, we start by rejecting plaintiff's argument that the Supreme Court has determined that <u>N.J.S.A.</u> 54:5-89.1 renders unlawful all profit-sharing agreements in this setting. To the contrary, the Court recognized that the statute was not designed to bar investors from "helping property owners in desperate need of financial assistance." 189 <u>N.J.</u> at 328. There is nothing contained in the <u>Cronecker</u> decision that limits the form such financial assistance must take or that which it may not take. The focus, instead, must be aimed in the direction of the consideration conveyed. <u>See</u> <u>id.</u> at 330-31.

In defining what constitutes nominal consideration, the Court rejected previously-recognized, mathematical approaches, <u>id.</u> at

---

[2] We have renumbered plaintiff's arguments.

333-34,[3] in favor of "a more flexible, under-all-the-circumstances approach that will keep the focus on the benefit to the property owner facing forfeiture of his land," id. at 334-35. Consequently, the Court directed courts to be "reluctant to strike-down a third-party financing arrangement that will provide some meaningful monetary relief to the property owner." Id. at 335.[4] We thus reject

---

[3] The Court rejected both "the so-called percentages test" recognized in Savage v. Weissman, 355 N.J. Super. 429, 439 (App. Div. 2002), and the economic realities test and the windfall profits test discussed in Corestates/N.J. Nat'l Bank v. Charles Schaefer Sons, Inc., 386 N.J. Super. 554, 564-65 (App. Div. 2006). See Cronecker, supra, 189 N.J. at 333-34. In so holding, the Court recognized that "[s]trict mathematical equations cannot address the varying circumstances that may bear on a fair determination of the issue," and emphasized that courts must only ascertain whether the financial arrangement with the intervenor provides the property owner with "some meaningful monetary relief." Id. at 335.

[4] We must approach such disputes by recognizing that the contestants — that is, the tax sale certificate holder and the intervenor — pursue the same goal: a lucrative return on their efforts. Id. at 330. Their professed concerns about the municipality's collection of taxes or the property owner's right to freely convey title are certainly of interest to the court and are often served when these market forces are applied. But, in reality, the contestants' interests in those matters are secondary at best to what they are truly after, and we should not be swayed or distracted by either contestant's attempt to seize the moral high ground in such matters. Indeed, if it was actually out to shield the Berezanskys from entities such as Bandi, plaintiff could have taken steps to protect them as well as its own interests. As the Supreme Court noted in Cronecker, the tax sale certificate holder always "control[s] [its] own fate[]." Id. at 329. Plaintiff here, like the plaintiffs in Cronecker, "could have beat [the third-party investor] to the punch and offered to purchase title to the property directly from the owner[]." Id. at 330.

A-5385-15T2

the argument that our jurisprudence calls for a blanket rejection of all profit-sharing agreements in this context.

The Cronecker Court left no doubt that it is not the nature of the financial arrangement that matters but whether the consideration given to the property owner was only nominal. The Court emphasized that the statute does not "prohibit a third-party investor, who intervenes timely in a foreclosure action, from purchasing the property owner's interest for more than nominal consideration," id. at 331, and that which is "more than nominal consideration" is that which "is not insubstantial under all the circumstances" but rather "an amount, given the nature of the transaction, that is not unconscionable," id. at 335. In defining what the Legislature meant by nominal consideration, the Court referred not only to what has historically been viewed as nominal, such as $25 or $50, but also to the fact that the Legislature had responded to Bron, where the intervenor offered the owner only "one-fiftieth" of the property's value. Id. at 332-33. In assessing the Legislature's intentions in N.J.S.A. 54:5-89.1, the Court ultimately recognized that a court's view of nominal consideration should be "more flexible" and should consider all the circumstances with an eye toward the benefit received by the owners when considering they are "facing forfeiture of [their] land." Id. at 334-35. We take this to require not only a traditional examination

7

of whether the consideration is more than "small" or "trifling," id. at 332, but also an examination of that question from the property owner's standpoint. In this latter respect, we cannot avoid comparing the benefits conveyed by the financial arrangement between Bandi and the Berezanskys and the catastrophic financial impact facing the Berezanskys if their agreement with Bandi is not given effect.

Consequently, we agree with the chancery judge that Bandi gave more than nominal consideration; the Berezanskys are far better off with the Bandi agreement than otherwise. In fact, plaintiff concedes that the $10,000 payment provided the Berezanskys with "a real and tangible benefit." That payment alone constitutes more than "nominal consideration" for entry into the profit-sharing agreement, and any doubt about the legal question posed is erased by Bandi's additional obligations to: pay the outstanding approximate $43,000 tax lien; satisfy the State's $70,000 judgment against Richard Berezansky; and allow the Berezanskys with a rent-free, use-and-occupancy period. Although an amount equal to that paid by Bandi to satisfy the tax lien and judgment will be recouped by Bandi from the sale proceeds prior to the sixty-five/thirty-five split — thus offering some support for plaintiff's argument that part of the consideration may appear illusory — the initial $10,000 payment and the use-and-occupancy

A-5385-15T2

agreement are certainly real and more than a trifle, and we do not interpret the profit-sharing agreement as allowing reimbursement of those items to Bandi off the top of the sale proceeds.[5]

To summarize, Bandi's financial obligations are not insubstantial and certainly represent more than nominal consideration. Even though the tax payments, the repairs, and the satisfaction of the $70,000 judgment will be returned to Bandi following the property's sale, their payment prior to the sale constitutes a benefit that exceeds the nominal threshold; indeed, should the property never sell for a profit, the Berezanskys would obtain a considerable benefit from being relieved of the $70,000 judgment.[6] And — not to be ignored — the Berezanskys secured a

---

[5] Plaintiff contends that the use-and-occupancy agreement was not free and was at least partially illusory. It argues that the profit-sharing agreement requires a retention of $5000 from the Berezanskys' share of the net proceeds to be released to the Berezanskys only upon the termination of their occupancy; in short, plaintiff claims that the Berezanskys are actually paying for their use and occupancy of the property. We disagree. The provision does call for a $5000 retention, but that stipulation's express purpose was to ensure the Berezanskys' timely departure at the conclusion of the use and occupancy period and also to further answer for any property damages that might occur during that period. So long as the Berezanskys depart when promised without causing any damage to the premises, that $5000 remains theirs.
[6] Plaintiff discounts the significance of the obligation to satisfy the $70,000 judgment by arguing "there is no evidence that the State is attempting to enforce [this] judgment." There is no dispute that the judgment exists and is outstanding; being free of this debt can hardly be viewed as something nominal.

A-5385-15T2

right to recover sixty-five percent of the net proceeds that would not be available if the Bandi agreement were found ineffectual or unlawful. We are satisfied that the form of the Bandi-Berezansky financial arrangement was not barred by N.J.S.A. 54:5-89.1 as that statute has been interpreted and enforced by our Supreme Court, and that Bandi gave more than nominal consideration in obtaining title and the right to redeem.

Affirmed.[7]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] During the appeal's pendency, plaintiff moved to strike Bandi's brief and appendix because Bandi included materials outside the trial court record. In response, Bandi cross-moved to supplement the record, and plaintiff opposed that motion. Another panel of the court reserved, leaving those cross-motions for this panel to decide. Because we have decided this appeal solely through consideration of the factual information provided to the trial court, we deny both motions. To be clear, we have denied the motion to supplement; in denying plaintiff's motion, we have not stricken Bandi's brief or appendix but have simply disregarded any materials and arguments based on materials not put before the trial court.

A-5385-15T2